# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIAM DOMSIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-208-PRC |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant, Allstate's Motion for Summary Judgment [DE 27], filed by Defendant Allstate Insurance Company on August 12, 2010. Plaintiff William Domsic filed a response brief on August 12, 2010, to which Defendant filed a reply brief on the same day.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 19, 2009, Plaintiff filed a Complaint in the Lake County Superior Court against Defendant, which was removed to this Court on July 23, 2009, alleging that Defendant breached its duty of good faith and fair dealing with regard to its insurance contract by causing an unfounded delay in making medical payments, arbitrarily denying and delaying the payment of medical bills, and exercising an unfair advantage to force Plaintiff to settle his underinsured motorist claim by failing to process his uninsured motorist claim in a timely manner. Defendant filed its Answer on July 27, 2009.

Plaintiff was involved in a motor vehicle accident on September 5, 2005, during which he sustained injuries to his ankle. The vehicle that Plaintiff was driving during the accident was insured under a policy that Defendant issued to Plaintiff's father.

On December 14, 2005, Plaintiff was evaluated by Dr. Armen Kelikian, regarding the accident, at the Illinois Bone and Joint Northwestern Orthopedics Institute and provided to his physician that Allstate was his primary insurer. According to Plaintiff, in January 2006, Dr. Kelikian's office informed him that Defendant represented that it would not pay medical bills related to the accident. Accordingly, Dr. Kelikian billed Plaintiff's secondary insurer, which was through his employer.

Plaintiff underwent surgery related to his injured ankle on February 16, 2006, which resulted in Plaintiff incurring medical costs that Defendant refused to pay. Dr. Kelikian scheduled a second surgery for January 2007, but he refused to perform the surgery because Defendant had not paid him for the February 16, 2006 surgery.

On February 13, 2007, Plaintiff's attorney sent Defendant a letter alleging that Defendant failed to pay Plaintiff's medical bills under the medical payments provision of his insurance policy and failed to approve payment for his second surgery, which constituted bad faith conduct. Accordingly, Plaintiff's attorney requested that Defendant pay Plaintiff's medical bills immediately so that Dr. Kelikian could proceed with the second surgery.

On March 2, 2007, Plaintiff's attorney sent another letter to Defendant again alleging that Defendant failed to pay Dr. Kelikian's bill and that he will not perform the second surgery without payment or Defendant's authorization. Plaintiff's attorney provided that he was "left with no choice but to bring this bad faith policy conduct to the Court." Def.'s Mot. Summ. J., Ex. 4.

Plaintiff's attorney sent Defendant another letter on April 17, 2007, again raising the issue of Defendant's failure to pay Plaintiff's medical bills under the medical payment coverage portion

of his policy and this resulted in the bill being turned over to collection, which Plaintiff's counsel alleged was another claim for bad faith.

On May 10, 2007, Plaintiff's attorney sent Defendant a letter indicating that Defendant refused to allow Plaintiff to accept money from the underinsured motorist, failed to pay his medical expenses, and allowed his unpaid medical bills to go to collection. Plaintiff's counsel represented that Plaintiff had a claim for underinsured motorist benefits, medical payments, and bad faith.

Plaintiff represents that on June 5, 2007, he received an explanation of benefits[1] ("EOB") from Defendant denying all Illinois Bone and Joint Institute charges from December 19, 2005, through January 8, 2007, as being duplicative of a previously billed procedure, which Defendant had yet to pay. Plaintiff received a June 5, 2007 letter denying charges for March 16, 2007, as being duplicative of a previously billed procedure. On June 6, 2007, Plaintiff received another EOB[2] denying charges from December 19, 2005, through February 27, 2006, as the charges were purportedly unrelated to the accident and Defendant also issued a check for Dr. Kelikian's first surgery. On June 6, 2007, Defendant also sent Plaintiff an EOB[3] approving the charges that it rejected in the June 5, 2007 EOBs.

On September 28, 2007, Plaintiff received another EOB[4] from Defendant denying all charges from the Illinois Bone and Joint Institute, some of which Plaintiff represents were already paid and

---

[1] Plaintiff has failed to provide the Court with a copy of this explanation of benefits, but Defendant does not dispute that Plaintiff received it.

[2] Plaintiff has failed to provide the Court with a copy of this explanation of benefits, but Defendant does not dispute that Plaintiff received it.

[3] Plaintiff has failed to provide the Court with a copy of this explanation of benefits, but Defendant does not dispute that Plaintiff received it.

[4] Plaintiff has failed to provide the Court with a copy of this explanation of benefits and the Court is unable to determine which dates of service were referenced.

some of which were unpaid, as being duplicative of a previously billed procedure. On November 16, 2007, Defendant sent Plaintiff a letter and EOB indicating that it would not pay for treatment performed by the Illinois Bone and Joint Institute regarding procedures on February 27, 2006, April 17, 2006, September 18, 2006, and January 8, 2007, because additional documentation was required for consideration of payment.[5]

On November 29, 2007, Defendant settled Plaintiff's underinsured motorist claim for $40,000.00. On November 17, 2009, Plaintiff received a statement from the Northwestern Medical Faculty Foundation indicating Defendant's failure to pay the anaesthesiologist's bill from the February 16, 2006 surgery.

Defendant filed its Motion for Summary Judgment and brief in support on August 12, 2010. Plaintiff filed his response brief on August 12, 2010, and Defendant filed its reply on August 12, 2010.

On August 12, 2010, the parties orally consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing

---

[5] On February 15, 2008, Defendant sent Plaintiff a check for a consultation and examination on December 19, 2005.

4

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

In its Motion for Summary Judgment, Defendant argues that Plaintiff did not file his bad faith claim within the applicable statute of limitations time period so summary judgment should be granted in its favor.

"Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured." *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). Indiana first recognized a tort claim against an insurer for breaching its duty to deal in good faith with an insured in *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind. 1993). *See Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 580 F. Supp. 2d 701, 717 (S.D. Ind. 2008). The Indiana Supreme Court in *Erie* recognized two distinct legal theories under which a breach of this duty can be brought: "one in contract and one in tort, each with separate, although often overlapping, elements, defenses, and recoveries." *Erie*, 622 N.E.2d at 520. In particular, the Indiana Supreme Court held that:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from
> (l) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id.* at 519. The duty to act in good faith is distinct from the duty not to breach the insurance contract. *Westfield*, 580 F. Supp. 2d at 717.

Under Indiana law, a claim that the duty of good faith and fair dealing has been breached is considered to be the same as a claim of breach of fiduciary duty and is governed by the same two-year statute of limitation. *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003). The applicable statute of limitations, Indiana Code § 34-11-2-4, provides: "[a]n action for . . . injury to personal property . . . must be commenced within two (2) years after the cause of action accrues." Ind. Code § 34-11-2-4(2).

Under Indiana's discovery rule, "a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an

7

injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat. Bank,* 586 N.E.2d 840, 843 (Ind.1992). The determination of when a cause of action accrues is generally a question of law. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Id.*

Here, Defendant argues that Plaintiff knew of the existence of the grounds for his bad faith claim on at least February 13, 2007, as counsel for Plaintiff sent Defendant letters on February 13, 2007, March 2, 2007, and April 17, 2007, indicating that Defendant allegedly engaged in bad faith conduct and threatened to bring a suit on the alleged bad faith claim. However, Plaintiff waited until June 19, 2009, to file the instant suit, thereby making it untimely.

In his response brief, Plaintiff acknowledges that the two-year statute of limitations applies in this case, but instead argues that the statute of limitations is tolled under the continuing wrong doctrine. The doctrine of continuing wrong applies when an entire course of conduct combines to produce an injury. *Catt ex rel. Skeans v. Affirmative Ins. Co.*, No. 2:08-cv-243-JVB-PRC, 2009 WL 2175986, at *10 (N.D. Ind. July 21, 2010) (Slip Copy). "When this doctrine applies, the statute of limitations begins to run at the end of the continuing wrongful act." *Id.* "For this doctrine to apply, a plaintiff must establish that the alleged injury-producing conduct was of a continuing nature and the injury is produced by a combination of acts." *Id.* "This doctrine is not equitable, but instead defines when an act, omission, or neglect took place." *Id.*

Plaintiff argues that the claims for bad faith handling of his medical payments has not accrued because Defendant still has not paid his bills and its wrongful conduct has not yet ended. As to the claim for bad faith handling of his underinsured claim, Plaintiff argues that the statute of

8

limitations did not begin to run until November 29, 2007, when Plaintiff exercised its unfair advantage over Plaintiff and forced him to settle his underinsured claim, and this claim was filed before the statute of limitations expired. Defendant argues that the doctrine of continuing wrong does not apply to this case as Defendant's purported breach of its duty to act in good faith occurred when it allegedly caused an unfounded delay, Plaintiff discovered the facts providing a basis for his bad faith claim more than two years before he filed his suit, as indicated in the series of letters from his attorney threatening to file a bad faith claim, and the fact that he continued to suffer repercussions from Defendant's alleged breach does not entitle him to take advantage of the doctrine to extend the time within which to file the instant suit.

The doctrine of continuing wrong does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action, even if his relationship with the tortfeasor continues beyond that point. *Johnson v. Blackwell*, 885 N.E.2d 25, 31-32 (Ind. Ct. App. 2008).

Here, in his February 13, 2007 letter to Defendant, counsel for Plaintiff indicated that Defendant had not paid Plaintiff's medical bills under the medical payments provisions of his policy and would not pay for the second surgery with Dr. Kelikian, all constituting bad faith conduct. In the March 2, 2007 letter, counsel for Plaintiff again raised the issue of Defendant's failure to pay for Dr. Kelikian's previous bill and failure to authorize the second surgery, again alleging that this was bad faith conduct and that he was "left with no choice but to bring this bad faith policy conduct to the Court." Def.'s Mot. Summ. J., Ex. 4. In an April 17, 2007 letter, Plaintiff's counsel again raised the issue of Defendant's failure to pay Plaintiff's medical bills and alleged bad faith conduct. Accordingly, the evidence of record supports that Plaintiff was aware of his cause of action for

9

breach of Defendant's duty of good faith and fair dealing by bad faith conduct as early as February 13, 2007. *See C & E Corp. v. Ramco Industries, Inc.*, 717 N.E.2d 642, 646 (Ind. Ct. App. 1999) (finding that the doctrine of continuing wrong did not apply where the plaintiff understood the ramifications of the injury and threatened to sue for the injury within the limitations period).

Further, the EOB that Plaintiff received on June 5 and 6, 2007 denying claims for December 19, 2005, through January 8, 2007, and for March 16, 2007, were sent by Defendant more than two years before the instant suit was filed. The September 28, 2007 and November 16, 2007 EOBs denied payment for claims that were previously denied by Defendant, rather than new claims. Based on the evidence of record, the Court concludes that the alleged bad faith conduct that Plaintiff alleges as unfounded delay in making payments and denying medical payments stems from the Defendant's denial or late payment of claims before, at the latest, June 6, 2007, which counsel for Plaintiff addressed in his letters to Defendant. It was at that point that Plaintiff's injury and damages occurred and the statute of limitation began to run on his bad faith claims against Defendant for unfounded delay in making medical payments and denial of payments. Although the impact of Defendant's action in denying and delaying in making payments occurred over several months, it did not constitute a continuing wrong. Therefore, Plaintiff's suit on these claims, filed on June 19, 2009, is untimely.

However, regarding Plaintiff's claim that Defendant exercised an unfair advantage to force him to settle his underinsured motorist claim, this claim was filed within the two year statute of limitations. As already noted in this Opinion and Order, the Indiana Supreme Court has recognized that the obligation of good faith and fair dealing includes the insurer's obligation to refrain from exercising any unfair advantage to pressure an insured to settle his claim. *Erie Ins. Co.*, 622 N.E.2d

at 519. Accordingly, this constituted separate alleged bad faith conduct and since it occurred on November 29, 2007, and Plaintiff filed his Complaint on June 19, 2009, this claim is timely.

## CONCLUSION

Accordingly, based on the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Defendant, Allstate's Motion for Summary Judgment [DE 27]. The Court **GRANTS** the motion as to Plaintiff's bad faith claims for unfounded delay in making medical payments and arbitrary denial and delay in the payment of medial bills. The Court **DENIES** the motion as to Plaintiff's bad faith claim for unfair advantage by pressuring Plaintiff into settlement of his underinsured motorist claim.

SO ORDERED this 19th day of August, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record