# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIAM DOMSIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-208-PRC |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant, Allstate's Motion for Summary Judgment [DE 33], filed by Defendant Allstate Insurance Company on May 26, 2011, and a Motion to Strike Plaintiff's Response to Allstate's Motion for Summary Judgment [DE 35], filed by Defendant on June 28, 2011.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 19, 2009, Plaintiff William Domsic filed a Complaint in the Lake County Superior Court against Defendant Allstate Insurance Company that was removed to this Court on July 23, 2009. The Complaint alleges that Allstate breached its duty of good faith and fair dealing with regard to its insurance contract by causing an unfounded delay in making medical payments, arbitrarily denying and delaying the payment of medical bills, and exercising an unfair advantage to force Domsic to settle his underinsured motorist claim by failing to process his uninsured motorist claim in a timely manner. Allstate filed its Answer on July 27, 2009.

Domsic was involved in a motor vehicle accident on September 5, 2005, during which he sustained injuries to his ankle. The vehicle that Domsic was driving during the accident was insured under a policy that Allstate issued to Domsic's father (the "Domsic Policy"). The other vehicle

involved in the accident was insured through United Automobile Insurance Group ("United Auto"). The Domsic Policy provided two types of relevant coverage: Automobile Medical Payments Coverage ("Med Pay"), providing coverage for medical treatment for bodily injury suffered by an insured person arising out of a motor vehicle accident, and Uninsured Motorists Coverage ("UIM"), providing damages which an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured vehicle.

In June, 2007, United Auto settled Domsic's claims against its insured for the statutory minimum of $25,000. Allstate consented to the settlement amount and waived any subrogation claim with regard to funds paid under the Med Pay coverage. Domsic presented Allstate with a demand package related to the UIM claim on August 28, 2007, but did not include all of Domsic's medical records in the demand package. Allstate settled Domsic's UIM claim on November 29, 2007, for $40,000. As of November, 2007, Allstate had also paid $43,021 of Domsic's medical expenses under the Med Pay coverage. This amount includes payment for Domsic's ankle surgery, paid in June of 2007, which had been the subject of correspondence from Domsic's counsel in February and March of 2007.

On August 12, 2010, Allstate filed a Motion for Summary Judgment claiming that Domsic's claims were barred by the applicable statute of limitations. On August 19, 2010, the Court granted in part Allstate's Motion for Summary Judgment, finding that the applicable statutes of limitations barred Domsic's claims that Allstate acted in bad faith through unfounded delay in making medical payments and through arbitrary denial and delay in the payment of medical bills.

On August 12, 2010, the parties orally consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this

case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus.*,

*Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir.

4

2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## ANALYSIS

**A.     Motion to Strike**

Allstate moves to strike Domsic's response to the Motion for Summary Judgment on the ground that the response was untimely filed. Domsic argues that the response was filed on time and should not be stricken.

Local Rule 56.1 provides that "[a] party opposing the motion [for summary judgment] must, within 28 days after the movant serves the motion, file and serve . . a response brief." N.D. Ind. L.R. 56.1(b)(1). In calculating the dates on which a response brief is due, "[t]ime shall be computed as provided in Fed. R. Civ. P. 6 . . ." N.D. Ind. L.R. 7.1(a). Federal Rule of Civil Procedure 6(d) provides: "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). Federal Rule of Civil Procedure 5(b)(2)(E) provides for the service of a paper by "sending it by electronic means if the person consented in writing–in which event service is complete upon transmission," and Rule 5(b)(3) provides that "[i]f a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)." Fed. R. Civ. P. 5(b)(2)(E); 5(b)(3). Rule 5(d)(3) provides that "a paper filed electronically in compliance with a local rule is a written paper for purposes of these rules." Fed. R. Civ. P. 5(d)(3). Local Rule 5.2 provides for service by electronic means. N.D. Ind. L.R. 5.2.

5

Allstate's Motion was filed on May 26, 2011. Twenty-eight days later was June 23, 2011, and the three day addition under Rule 6(d) expired on June 26, 2011. Federal Rule of Civil Procedure 6(a) provides that when calculating a period of time, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Because June 26, 2011, was a Sunday, Domsic's response was due on June 27, 2011. Federal Rule of Civil Procedure 6 provides that the "last day" for filing "ends[,] for electronic filing, at midnight in the court's time zone." Fed. R. Civ. P. 6(a)(4).

The time stamp on the docket entry indicates that Domsic's response was filed at 0:48 AM on June 28, 2011, but the Northern District of Indiana electronic docketing system operates on Eastern Time although the Hammond Division operates on Central Time. Accordingly, Domsic's response was filed at 11:48 p.m. Central Time, 12 minutes before the deadline, and was timely. Therefore, Allstate's Motion to Strike is denied and the Court will consider Domsic's response.

**B.  Summary Judgment**.

The sole remaining claim in this case is that Allstate breached its duty of good faith by "exercis[ing] an unfair advantage to force plaintiff to settlement of his underinsured motorist claim by failing to process his uninsured motorist claim in a timely manner." Compl. ¶ 8. In its Motion for Summary Judgment, Allstate argues that the undisputed facts establish that it paid Domsic's claim in a prompt matter and did not breach the duty of good faith and fair dealing.

Domsic argues that "[t]he essence of the claim is that by failing to pay Mr. Domsic's surgeon for over a year, Allstate prevented the second operation," referring to the ankle surgery that was the subject of correspondence from Domsic's counsel to Allstate in February and March of 2007, and

6

was paid for under Med Pay coverage in June of 2007. Pl.'s Resp. Br. at 9. However, the applicable statue of limitations barred Domsic's claims for bad faith concerning allegations of Allstate's refusal to make, or unfounded delays in making, payments under the Med Pay coverage. *See* August 19, 2010, Order [DE 30]. Accordingly, the Court will not consider Domsic's arguments regarding Med Pay coverage. As for the UIM coverage, Domsic argues that Allstate removed the cost of a needed surgery from the value of the UIM benefits in bad faith and pressured Domsic into taking the unfair settlement.

>   The Indiana Supreme Court has recognized that
>
>> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (l) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). However, "poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 713-714 (Ind. Ct. App. 2007) (quoting *State Farm Mut. Auto Ins. Co. v. Gutierrez*, 844 N.E.2d 572, 580 (Ind. Ct. App. 2006)) (other citations omitted); *see also Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008).

Domsic argues that Allstate failed to process his UIM claim in a timely manner. Allstate argues that there was no unfounded delay in making the UIM payment to Domsic. Domsic settled his claim with United Auto, the carrier for the underinsured motorist, in June, 2007. The Domsic Policy provides that Allstate

> [is] not obligated to make any payment for bodily injury under this coverage which arises out of the use of an underinsured motor vehicle until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

Accordingly, Allstate had no obligation to pay UIM benefits until after June, 2007. Domsic did not make a claim for UIM benefits until August 28, 2007, and the claim was settled on November 29, 2007.

It is not entirely obvious to the Court what delay Domsic is alleging constituted bad faith. He argues that there was inappropriate delay in paying for medical expenses, but, as described above, Domsic's claims dealing with Med Pay are no longer part of the instant suit and will not be addressed. He also argues that Allstate should have begun investigating Domsic's UIM claim in 2006, when Allstate received notice that Domsic would be seeking UIM benefits and received medical records from him. However, Allstate's obligation to pay UIM benefits did not arise until June, 2007. Failure to investigate a potential claim before the insured has a right to assert it does not constitute bad faith on behalf of the insurer. Nowhere does Domsic argue that the three months between Domsic's August 28, 2007, claim for UIM benefits and the settlement of the claim on November 29, 2007, was itself a delay so inappropriate as to constitute bad faith. Furthermore, even if that is Domsic's argument, the evidence demonstrates that delay was not due to bad faith. Allstate argues that the demand package received in June, 2007, did not include all of the medical records needed to fully evaluate the claim, and that Domsic did not provide all of the needed authorizations until October 18, 2007. Domsic does not dispute that the information was not included in the demand package, but argues that Allstate had already received the medical records in question separately. Even viewing the facts in the light most favorable to the non-moving party and assuming

8

that Allstate did have the records, its confusion about that fact or its inability to find the records, while certainly undesirable, cannot be attributed to "dishonest purpose, moral obliquity, furtive design, or ill will" on Allstate's part. *Lumbermans*, 873 N.E.2d at 714. Accordingly, the delay did not amount to bad faith and did not violate Allstate's obligation of good faith and fair dealing.

Domsic argues that the delay in processing his UIM claim created an unfair advantage that pressured him into settling his claim. As described above, the Court does not find any excessive delay caused by bad faith. Furthermore, when asked at his deposition what Allstate did or said to pressure him into settling his UIM claim, Domsic replied: "Nothing." In his deposition testimony, Domsic ascribed the pressure to accept the settlement to his family's financial needs, not to anything said or done by Allstate. Domsic argues in his response brief that Allstate knew that he was unable to work and was under significant financial pressure at the time of the negotiations surrounding the UIM settlement. Allstate counters that the only indication it had of Domsic's supposed financial difficulties were assertions made in letters by Domsic's attorney during the settlement process, and that the correspondence was contradicted by the fact that, at the time Domsic asserted his claim for UIM benefits, Allstate had paid all of his medical bills through Med Pay coverage, he had just received a $25,000 settlement from United Auto, and Allstate had documentation regarding Domsic's employment through June, 2007.

Domsic argues that he was pressured into accepting the $40,000 settlement, worth "far less" than the actual value of the claim. In particular, he argues that Allstate inappropriately removed the cost and expected consequences of an anticipated future surgery from the value of the claim. However, in her deposition, the claims adjustor testified that payment for future surgery would come from Domsic's Med Pay coverage, rather than the UIM coverage, so the amount was properly

9

omitted from consideration in calculating the UIM claim. Furthermore, Allstate argues, the settlement amount was greater than the amount Domsic was entitled to under the terms of the Policy. The UIM coverage had a $100,000 per person limit on coverage, to be reduced by amounts paid under other coverage provided by the policy and by payments made by the responsible parties. In this case, at the time of the UIM settlement negotiations Domsic had received a settlement payment from the responsible party's insurance in the amount of $25,000 and payments from the Med Pay coverage in the amount of $43,021. However, Allstate paid $40,000 in the UIM settlement, or $8,021 more than the amount that Domsic was entitled to under the terms of the insurance contract. Accordingly, Allstate argues, there could be no bad faith in the settlement offer or pressure to accept an inappropriately low offer.

Although there is some dispute regarding whether Allstate knew that Domsic was experiencing financial difficulties at the time of the UIM settlement negotiations, Domsic testified that Allstate never did or said anything to pressure him into settling his claim, and the amount he received was greater than what Allstate was contractually obligated to provide. Accordingly, Domsic has not demonstrated any genuine issue of material fact that would indicate that Allstate exercised any unfair advantage to pressure him into a settlement of his claim or otherwise acted in bad faith.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Strike Plaintiff's Response to Allstate's Motion for Summary Judgment [DE 35] and **GRANTS** the Defendant, Allstate's Motion for Summary Judgment [DE 33]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Allstate Insurance Company and against Plaintiff William Domsic.

SO ORDERED this 13th day of September, 2011.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT

cc:    All counsel of record